# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| UNITED STATES OF AMERICA | CRIMINAL ACTION |
|---|---|
| VERSUS | NO: 17-49 |
| PATRICK HALE DEJEAN | SECTION: "S" (5) |

## ORDER AND REASONS

**IT IS ORDERED** that defendants's **Motion for New Trial** (Rec. Doc. 127) is **DENIED**.

## FACTUAL BACKGROUND

In this motion, defendant seeks a new trial[1] arguing that the court improperly denied his challenge for cause of Juror 31. Defendant also argues that due to administrative problems, a juror who was not impartial was seated. Specifically, defense counsel points to the fact that because several prospective jurors who had legitimate hardships were not flagged as such by the jury administrator's office, they were included in the venire and selected. Only after their selection was the court made aware of their legitimate hardships, requiring that they be excused. This resulted in a shortfall of two jurors and an alternate. To remedy this shortfall, by agreement of the court and counsel, venire members who had been dismissed as unnecessary were recalled and tendered, resulting in the seating of Juror 38. Defendant argues that he previously had not raised a cause challenge as to Juror 38, because at the time he made his challenges, the court

---

[1] Defendant also originally sought permission to interview the jurors, but he has since withdrawn that request.

needed only two alternates from venire members 33 through 40, and he anticipated the court would never reach Juror 38. He further alleges that the cause challenge would have been successful if raised.

The government opposes the motion, arguing that defense counsel is mischaracterizing Juror 31's testimony, and that when the totality of the examination of Juror 31 is considered, the court's ruling denying the motion to strike her for cause was justified.

## APPLICABLE LAW

In deciding whether to strike a potential juror for cause based on bias, "it is the adversary seeking exclusion who must demonstrate, through questioning, that the potential juror lacks impartiality. It is then the trial judge's duty to determine whether the challenge is proper." Wainwright v. Witt, 469 U.S. 412, 423 (1985)(internal citation omitted). The standard applied in making that determination is "whether the juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." Id. at 424 (internal quotation omitted). The judgment as to "whether a venireman is biased ... is based upon determinations of demeanor and credibility that are peculiarly within a trial judge's province." Uttecht v. Brown, 551 U.S. 1, 7 (2007).

## DISCUSSION

At the beginning of voir dire, Juror 31 agreed that she could put aside feelings of prejudice, sympathy, or passion and decide the cose solely on the evidence presented. Tr., p. 11. When questioned individually, her relevant testimony was as follows:

A: I do not gamble.

Q: And do you have a particular attitude toward those who do?

A: I think it's a silly way to spend your money, but that's what you choose to do. That's on you. But I mean I've had family members in the past that have had issues with gambling.

Q: In other words, you've had people who perhaps do it and have caused problems --

A: Yes.

Q: -- for their families?

A: Correct.

Q: How do you view gambling? I mean is it something -- Again, I can't look into your brain. But is it something you view as wrong, immoral, unethical? What?

A: I don't think it's so much immoral or unethical. I just -- Again, I don't agree with it. I just think it's silly, a way to throw your money away, personally.

Q: Would it affect the way you judge somebody who you will learn is an avid gambler?

A: Possibly.

Q: Okay. I appreciate your honesty. I mean if you say "possibly," you're leaving the possibility that it could affect you in an unfair way. Is that right?

A: Correct.

Q: If you tell us that, I take it what you're, in effect, saying to us -- and I appreciate it -- you shouldn't sit on this case.

A: No.

Q: Am I correct?

A: Yes.

Q: Okay. Thank you so much.

Tr., 23:16-24:25.

>Subsequently, the following sidebar occurred:
>
>MR. FAWER: We have for cause number 22. She's the one who said --
>
>THE COURT: I'll allow that.
>
>MR. FAWER: Number 27, the same thing.
>
>MR. WALKER: I object to 27. He was working it as well as he could and the most he could get out of her was he said she shouldn't be on the jury and she said "I guess not."
>
>MR. FAWER: That's right. Challenge for cause, your Honor.
>
>THE COURT: I'm going to allow Doolittle.
>
>MR. FAWER: Thirty-one, the same thing.
>
>MR. WALKER: I disagree. Again, I object.
>
>THE COURT: I'm not going to allow her.
>
>MR. FAWER: Didn't she say she couldn't be fair?
>
>THE COURT: No. That wasn't the context of her testimony. She said she wasn't going to waste her money. She didn't care about what other people did.

Tr., 26:12-27:7.

Defense counsel re-urged his cause challenge several times, each time emphasizing that Juror 31 should be excused because she had said gambling was evil. In fact, Juror 31 never said that gambling was evil; that was the statement of Juror 27, who the court did excuse for cause. Defense counsel, confused about who had said gambling was "evil," maintained that argument through the end:

4

> MR. FAWER: Judge, I know this is belated, but when we moved for a cause challenge on number 31, we didn't have the quote. She said gambling is evil. That was her quote.
>
> THE COURT: I understand that, Mr. Fawer. You take that up later on appeal if necessary. I understand. I listened to the whole testimony and it's my decision.

Tr., 43:1-8.

Thus, at trial, defense counsel's challenge to Juror 31 was based on the mistaken notion that Number 31 had said gambling was evil. She had not. The essence of her testimony can be summed up as follows: "I don't think it's so much immoral or unethical. I just -- Again, I don't agree with it. I just think it's silly, a way to throw your money away, personally." Tr., 24:8-10. Moreover, while defense counsel ultimately was able to extract a concession from Juror 31 that she shouldn't sit on the case, it was the court's impression that Juror 31's ultimate acquiescence was made in response to leading questions, and out of a desire to simply end the questioning. Considering the totality of the circumstances, the details of the exchange, and her demeanor, the court finds that Juror 31 was not properly the subject of a challenge for cause.

***Seating of Previously Dismissed Jurors***

Unfortunately, after selecting a jury of twelve from the first 33 members of the venire, due to problems with the Jury Administrator's office, the court learned that three potential jurors had legitimate hardships after they had already been selected and the venire dismissed. The court then recalled three dismissed venire members, and after discussion ***and with agreement by all counsel,*** it was decided to proceed with them as the final two jurors and one alternate. Juror 38 was one of the recalled jurors seated. Defendant did not raise any objection to going forward at that time.

Defendant now argues that the mutually agreed upon resolution to avoid an aborted jury resulted in the seating of a juror that was not fair and impartial. Specifically, he contends that if twelve jurors had not been selected from the first 33 members of the venire, so that only two alternates were needed from Jurors 34-40, and he considered it a realistic possibility that Juror 38 would be seated, he would have (successfully) challenged him for cause.

However, the solution to the problem that arose at trial after the initial jury was selected was discussed at length with all counsel, and explicitly agreed to by defense counsel. When the situation first came to light, defense counsel stated "We can solve it. Judge, I think the problem is solvable." Tr., p. 50:15-16. Then in fashioning a solution, the following colloquy took place:

> MR. WALKER: We need two jurors and one alternate. We need three total.
>
> THE COURT: We'll finish that from the list of people we've already spoken to. We'll get them back here.
>
> MR. FAWER: I have no problem with that.

Tr., 52:10-15.

Moreover, after the solution was agreed upon and before the jury was sworn, an intervening lunch break gave counsel ample time to reconsider. At that time, jurors 38 through 40 were tendered and the following colloquy occurred:

> THE COURT: Our last one was Bailey. So Roberts has already been excused. Pizzolato has been excused. So I will tender number 38. Is that right?
>
> MR. WALKER: That's correct. He has no cuts. We've agreed to accept number 38.
>
> THE COURT: Okay. And number 39?

>   MR. WALKER: And we've agreed to accept number 39.
>
>   THE COURT: And number 40?
>
>   MR. WALKER: And we've agreed to accept number 40.
>
>   MR. ROBERT: Subject to them being questioned that they haven't done any research.
>
>   MR. FAWER: Just make sure they haven't talked about it since they thought they were discharged.

Tr., 56:25-57:15.

Thus, after a lunch break and several discussions regarding the juror problem, when Juror 38 was tendered and accepted by the government, the sole reservation raised by defense counsel was a concern that the returning jurors may have researched the case. Defense counsel did not object to seating of Juror 38, and in fact explicitly agreed to it, so long as Juror 38 had not researched the case in the interval between his being dismissed and returning to court. It was established he had not. Defendant's objection now is untimely. "A post-trial challenge to the composition of the jury is untimely and therefore barred." Dawson v. Wal-Mart Stores, Inc., 978 F.2d 205, 210 (5th Cir. 1992). Accordingly,

**IT IS ORDERED** that defendants's **Motion for New Trial** (Rec. Doc. 127) is **DENIED**.

New Orleans, Louisiana, this  17th   day of May, 2019.

**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**